**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| EDMUND K. MAWHINNEY | : | |
| and MICHAEL V. FRANCESCO, | : | |
| | : | Civil Action No. |
| Plaintiffs, | : | 08-cv-3317 (NLH) (JS) |
| | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| KEVIN A. BENNETT, | : | |
| individually, | : | |
| DOMENIC CAPPELLA, individually: | | |
| and in his official capacity | : | |
| as the Atlantic City Business | : | |
| Administrator and/or Assistant: | | |
| Business Administrator, | : | |
| the CITY OF ATLANTIC CITY, and: | | |
| THE ATLANTIC CITY VULCANS, | : | |
| Atlantic City Chapter of the | : | |
| International Association of | : | |
| Black Professional | : | |
| Firefighters, jointly, | : | |
| severally, and in the | : | |
| alternative, | : | |
| | : | |
| Defendants. | : | |

---

**Appearances:**

Michelle J. Douglass, Esquire
The Douglass Law Firm, LLC
1601 Tilton Road
Suite 6
Northfield, NJ 08225
*Attorney for Plaintiffs Edmund K. Mawhinney and Michael V. Francesco*

A. Michael Barker, Esquire
Barker, Scott & Gelfand Linwood P.C.
Linwood Green
210 New Road
Suite 12
Linwood, NJ 08221
*Attorney for Defendant Kevin A. Bennett*

Patrick J. Wolfe, Esquire
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
Five Greentree Center
Suite 303
Marlton, NJ 08053-3422
*Attorney for Defendant Domenic Cappella*

Cynthia E. Ringel, Esquire
Jasinski, P.C.
Ten Park Place
Newark, NJ 07102
*Attorney for Defendant City of Atlantic City*

Lucas E. Phillips, Jr., Esquire
134 Evergreen Place
Suite 301
P.O. Box 2487
East Orange, NJ 07019
     and
Robert L. Tarver, Jr., Esquire
Law Offices of Robert L. Tarver, Jr.
66 South Main Street
Toms River, NJ 08757
*Attorneys for Defendant the Atlantic City Vulcans*

**HILLMAN, District Judge**

Plaintiffs, Edmund K. Mawhinney and Michael V. Francesco (or, collectively "plaintiffs"), filed a complaint in this Court against Kevin A. Bennett, the Captain of the Atlantic City Fire Department,[1] Domenic Cappella, the Business Administrator and, later, the Assistant Business Administrator for the City of Atlantic City, the City of Atlantic City, and the Atlantic City Vulcans, a chapter and member of the

---

[1]     Plaintiffs aver that, at all relevant times, Bennett also was the President of the Atlantic City Chapter of the Vulcans Organization.

2

International Association of Black Firefighters.  In their complaint, plaintiffs allege, pursuant to 42 U.S.C. § 1983, that defendants violated their federal civil rights as well as New Jersey statutory and common law.

Defendants, City of Atlantic City ("the City") and the Atlantic City Vulcans ("Vulcans"), each filed a Motion to Dismiss plaintiffs' complaint.  For the reasons set forth below, the City's motion will be granted.  The Vulcans' motion will be denied, without prejudice.

## I.   **JURISDICTION**

Plaintiffs set forth federal civil rights claims pursuant to 42 U.S.C. § 1983, as well as state law claims in accordance with New Jersey statutory and common law.  This Court has subject matter jurisdiction over plaintiffs' federal civil rights claims pursuant to 28 U.S.C. § 1331.  Further, this Court may exercise supplemental jurisdiction over plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367.

## II.   **BACKGROUND**[2]

Plaintiff, Edmund Mawhinney, was a firefighter with the

---

[2]     The following facts are culled from plaintiffs' complaint filed in this Court.  Given that the present matter comes before the Court by way of motions to dismiss filed by both the City and the Vulcans, the plaintiffs' allegations are accepted as true and viewed in a light most favorable to plaintiffs, as is required when reviewing a motion to dismiss.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

Atlantic City Fire Department ("ACFD") from August 29, 1979 until September 19, 2006.  At the time of his termination in September 2006, Mawhinney held the rank of Captain.  Plaintiff, Michael Francesco, has been a firefighter with the ACFD since April 28, 1998 and currently holds the rank of Captain. Plaintiffs are Caucasians.

On December 30, 2005, plaintiffs each filed suit in the Superior Court of New Jersey, naming as a defendant, among others, the City.  In their respective complaints, each plaintiff alleged that he had suffered harassment, retaliation, hostile work environment, discrimination, and the intentional infliction of emotional distress.  In particular, plaintiffs maintained that they were the targets of disciplinary actions and other adverse treatment because they recommended disciplinary action against Ricky Williams, an African-American firefighter with the ACFD, who purportedly violated ACFD rules and regulations.  According to plaintiffs, Williams has never been disciplined for his own transgressions.

On May 7, 2007, several months after he had been terminated from his job, Mawhinney filed an amended complaint in the Superior Court, adding Bennett and Williams as defendants.  In the amended complaint, Mawhinney iterated that Bennett and Williams brought frivolous charges of racial discrimination against him, resulting in his wrongful

termination.  Mawhinney also alleged that "[a]ny charge[s] against Bennett or Williams were dismissed, without investigation, because of their race," and, again, that Williams had never been disciplined for his infractions.  On the contrary, Mawhinney averred that an African-American city official, responsible for investigating allegations made against him, "influenced and/or misrepresented the testimony of witnesses she interviewed in order to reach a racially motivated pre-determined conclusion of guilt against Mawhinney based on the charges made by Williams."[3]

Plaintiffs' state court actions were settled, respectively.  However, on July 3, 2008, plaintiffs jointly filed a complaint in this Court.  In response, the City and the Vulcans have filed motions to dismiss plaintiffs' claims against them.  The following facts are germane to plaintiffs' federal action and the disposition of the present matter.

**A.   Edmund K. Mawhinney**

On September 19, 2006, Mawhinney was terminated as a result of accusations of racism made by Bennett and Williams. A week later, he appealed the termination to the Office of Administrative Law ("OAL"), averring that any allegations of

---

[3]     Mawhinney's amended complaint highlights other instances of alleged racial discrimination perpetrated by the City, specifically with regards to hiring and promoting firefighters.

5

racial misconduct were false.  Several of the disciplinary
charges against Mawhinney were subsequently dismissed by the
OAL judge.

In December 2007, the City and Mawhinney agreed to enter
into a settlement whereby the City would dismiss all
disciplinary charges against Mawhinney, reinstate him, make
payment of back pay and benefits totaling $199,148.44, and
allow for his retirement with an application for pension and
the provision of health care coverage for he and his wife.  The
parties agreed that the settlement agreement was to remain
confidential and that it would be presented to City Council for
final approval on December 28, 2007.

Prior to the City Council meeting, Bennett contacted a
local radio station and, while on the air, disclosed the terms
of the settlement agreement and restated his accusations of
Mawhinney's racist conduct.  In response, Mawhinney filed a
complaint with the ACFD, outlining Bennett's behavior and
noting that it constituted a violation of both the settlement
agreement and the ACFD's rules and regulations.

On December 28, 2007, Bennett left the firehouse to attend
the City Council meeting at which the settlement agreement
between Mawhinney and the City would be addressed.  Although
Bennett was not authorized to leave his workplace and did not
secure proper relief, he received only a minor disciplinary

6

action in the form of a reprimand.  At the City Council meeting, Bennett attempted to persuade the Council to reject the settlement agreement because Mawhinney had committed a racist act.  In support of his advocation, Bennett rallied a group of African-Americans, including Vulcans, to attend the meeting, and displayed and discussed a confidential document which purportedly featured the City's conclusion that Mawhinney had committed a racist act.  In addition, Bennett had disseminated the story of Mawhinney's racism to the press.  Although discussing ACFD matters publicly violated ACFD rules and regulations, Bennett was not sanctioned for his disclosures.

The City Council did not approve the settlement at the meeting, instead re-listing the resolution seeking its approval for the Council's next meeting.  According to plaintiffs, "City Solicitor Anthony Swan indicated that City Council was intimidated by Bennett and the Vulcans members present at the December 28, 2007 council meeting because of race issues."  Nevertheless, Swan reported that the Council would approve the resolution at the next meeting.

After the City Council meeting, Atlantic City Mayor Scott Evans issued a written directive, dated January 2, 2008, stating, "This is a reminder that no one is permitted to communicate with the media on behalf of the City without first

obtaining permission from my office."  A week later, Bennett contacted another radio talk show, identified his position with the ACFD, and restated similar comments about Mawhinney's guilt.  On several occasions between January and April of 2008, Bennett repeated the allegations of racism against Mawhinney on the radio.  Despite Mawhinney's requests, Bennett was never disciplined for his actions.

In spite of representations to the contrary, the City Council refused to vote on the resolution twice more, once on January 23, 2008 and again on February 27, 2008.  According to plaintiffs, the Council's inaction was a result of the opposition of Bennett and the Vulcans.[4]  In the meantime, on January 30, 2008, the Merit System Board of the State of New Jersey Department of Personnel, the agency handling Mawhinney's appeal of termination, issued its final administrative determination concerning Mawhinney and acknowledged the settlement agreement between Mawhinney and the City.  Further, the Superior Court agreed to issue an Order of Disposition in

_____

[4] Plaintiffs' complaint states that, despite advising the City Solicitor that it would approve the settlement at its January 23, 2008 meeting, "City Council refused to vote . . . with the hopes that the Vulcans and . . . Bennett would lose interest and not appear at the next meeting to oppose the resolution"; and that, at the February 27, 2008 meeting, "Councilman Marsh asked twice for a motion on the resolution but each time it was met with silence by his seven colleagues [because] they would rather appease Bennett and the Vulcans."

relation to Mawhinney's civil action on the basis of
Mawhinney's agreement to dismiss his suit upon the City's
approval of the pending settlement.

After the City Council again refused to take action on the
resolution concerning the settlement between Mawhinney and the
City, Mawhinney filed an application, on February 28, 2008, to
enforce the settlement agreement and the Merit System Board's
order.  Finally, on March 12, 2008, the Council voted on the
settlement agreement and rejected it.  As they had done
previously, Bennett and members of the Vulcans attended the
meeting.  During that meeting, Bennett told the Council that he
would have Al Sharpton come to Atlantic City, seemingly
inciting race as a reason to reject the settlement.

In the aftermath of the settlement's rejection,
Mawhinney's civil case in the Superior Court was re-listed for
trial, and Mawhinney persisted with his motions he had filed
with the Merit System Board and the Superior Court which sought
to enforce the settlement agreement.  On March 26, 2008,
however, the Council revisited the resolution regarding the
settlement agreement and, contrary to its March 12th rejection,
finally approved the settlement.  Neither Bennett nor any
member of the Vulcans attended this meeting.

Following the City Council's approval of the settlement,
Bennett continued to make public comments about Mawhinney's

9

alleged racism.  Moreover, on April 1, 2008, Cappella, then the City's Assistant Business Administrator, contacted a local radio talk show to discuss Mawhinney's disciplinary matters, remarking that "Mawhinney was guilty" of racist acts. Mawhinney avers that while Cappella, a Caucasian, was immediately suspended for this incident, Bennett has never been disciplined for his alleged misconduct, despite the multiple complaints filed against him.

Finally, after the settlement's approval, the final Stipulation of Dismissal in Mawhinney's state action was filed with the Superior Court on April 25, 2008.  The Stipulation provides that Mawhinney agrees to dismiss his claims against "City of Atlantic City, Mayor Lorenzo Langford, Kevin Bennett and Ricky Williams . . . with prejudice in their entirety."

**B.   Michael V. Francesco**

Like Mawhinney, Francesco filed suit against the City, among others, in the Superior Court of New Jersey on December 30, 2005.  On October 15, 2007, while the state court action was pending, Bennett informed the Vulcans that Francesco had been impermissibly absent from a job detail.  Francesco denies this allegation.  Nevertheless, the Vulcans directed a letter to the Chief of the ACFD, accusing the administration of disciplining black firefighters more severely than white

10

firefighters.[5]  The letter demanded that Francesco be punished for his absence.

An investigation was conducted and revealed that Bennett had misrepresented information pertaining to Francesco's alleged absence and had failed to properly carry out orders. Bennett was not disciplined.  The written investigative report found the Vulcans' complaint to be "baseless and factually wrong."

On February 8, 2008, the Superior Court entered an Order of Disposition in Francesco's state court action against the City and others.[6]  The order was predicated upon a settlement agreement between Francesco and the City whereby the City agreed to pay Francesco approximately $75,000.  The court ordered that Francesco's suit "is hereby disposed of as follows: Settled while scheduled for trial."

C.   **Federal Suit**

---

[5] According to plaintiffs, Bennett and the Vulcans have a "direct line of unimpeded communication with Barbara Camper, the Affirmative Action officer," who is an African-American female and who "entertains each and every complaint [they make], baseless or not," and "continuously intervenes on [their] behalf . . . without investigation into the merits of their claims." Plaintiffs allege that she assists Bennett and the Vulcans indiscriminately because of race.  In this matter, plaintiffs state that she helped to direct the letter to the Chief of the ACFD.

[6]   Francesco's complaint did not specifically name Bennett.

11

On July 3, 2008, Mawhinney and Francesco filed a complaint in this Court.  Plaintiffs set forth federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging that the City violated their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the grounds of racial discrimination.[7]  In addition, plaintiffs assert state law claims against the City pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., ("NJLAD"); against Bennett and the Vulcans for intentional interference with economic advantage; and against Bennett, the Vulcans, and Cappella for defamation.

Particularly relevant to this matter, plaintiffs allege that the City's refusal to enforce ACFD rules and regulations, to properly investigate allegations against certain African-American firefighters, and to enforce Mawhinney's settlement demonstrate racially discriminatory conduct.  With regards to the Vulcans, plaintiffs state that the Vulcans have intentionally interfered with their economic advantage by interjecting themselves into Mawhinney's efforts to settle with the City and by encouraging an investigation against Francesco on the basis of frivolous allegations.  In addition, plaintiffs allege that the Vulcans defamed them by circulating false

---

[7]    Cappella is also mentioned as part of plaintiffs' Section 1983 claim.

information concerning Mawhinney's alleged racism on the radio and Francesco's alleged absence in a letter to the chief of the ACFD.

The City has filed a Motion to Dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' suit is precluded by the principles of the entire controversy doctrine and res judicata.  Further, the Vulcans request that the Court decline supplemental jurisdiction over plaintiffs' state law claims asserted against them.

**III.  DISCUSSION**

    **A.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446

13

(3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984) (citation and internal quotation marks omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)). Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950). Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the

14

plaintiff has a 'plausible claim for relief.'" <u>Id.</u> at 211
(quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  "[A] complaint must do
more than allege the plaintiff's entitlement to relief." <u>Id.</u>;
<u>see</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir.
2008) ("The Supreme Court's <u>Twombly</u> formulation of the pleading
standard can be summed up thus: 'stating . . . a claim requires
a complaint with enough factual matter (taken as true) to
suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable
expectation that discovery will reveal evidence of' the
necessary element." (quoting <u>Twombly</u>, 550 U.S. at 556)).  The
defendant bears the burden of showing that no claim has been
presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005).

## B.   The City's Motion to Dismiss Based on the Entire Controversy Doctrine and Res Judicata

The City argues that plaintiffs' federal claims must be
dismissed in accord with the entire controversy doctrine and
the principles of res judicata because plaintiffs were required
and failed to bring all of their claims in the initial state
court action.  The allegations set forth in plaintiffs' federal
complaint, the City submits, all arise from the same
controversies asserted in plaintiffs' state complaints and
predate the dismissal of those complaints.  The City therefore

contends that the claims articulated in the federal complaint should have been raised before the state court and are now barred from consideration.

Plaintiffs counter that their federal claims are separate and distinct from the earlier state claims and that they arose late during each of plaintiffs' respective state court proceedings, after the discovery period and time for filing additional claims had expired in each.  In particular, plaintiffs iterate that the factual nexus of their state claims differ from those of their federal claims and that equity favors consideration of their current complaint.  For those reasons, plaintiffs conclude that principles of preclusion should not bar their federal claims.

In applying the principles of res judicata or claim preclusion, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  Balthazar v. Atl. City Med. Ctr., 137 Fed. Appx. 482, 488 (3d Cir. 2005) (citation and internal quotation marks omitted); see Jones v. Holvey, 29 F.3d 828, 830 (3d Cir. 1994) (applying New Jersey preclusion law to a Section 1983 claim). New Jersey's entire controversy doctrine, codified in New Jersey Civil Practice Rule 4:30A provides:  "Non-joinder of claims required to be joined by the entire controversy doctrine

16

shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." N.J. Ct. R. 4:30A.  The claim preclusion element of the entire controversy doctrine is essentially tantamount to res judicata. See McNeil v. Legislative Apportionment Comm'n of State, 828 A.2d 840, 858-59 (N.J. 2003); see also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) ("New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives.  The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."); Peterson v. City of Long Branch, 2009 U.S. Dist. LEXIS 22178, at *18 (D.N.J. Mar. 19, 2009) ("The Entire Controversy Doctrine is New Jersey's own, distinctive application of res judicata principles.").  If anything, "[t]he entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine."  Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986).

A party will be precluded from relitigating its claims in New Jersey if three fundamental elements are met: "(1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and

(3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Balthazar, 137 Fed. Appx. at 489 (citing McNeil, 828 A.2d at 859; Watkins v. Resorts Int'l. Hotel & Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)).

"Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." Watkins, 591 A.2d at 599; see Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d Cir. 1991); Dowdell v. Univ. of Med. and Dentistry of N.J., 94 F. Supp. 2d 527, 534 (D.N.J. 2000). Thus, where a related claim arises during the pendency of litigation, "the claimant must seek leave to file a supplemental pleading thereby submitting to judicial discretion the determination of whether the claim should be joined in that action or reserved for a subsequent suit, and if the claimant fails to so move, he will ordinarily be barred from raising the claim in a subsequent suit." McNally v. Providence Wash. Ins. Co., 698 A.2d 543, 547 (N.J. App. Div. 1997) (citing Brown v. Brown, 506 A.2d 29, 34 (N.J. App. Div. 1986)); see Mystic Isle Dev. Corp. v. Peskie & Nehmad, 662 A.2d 523, 530 (N.J. 1995) ("A plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring the claim later."). However, "the entire controversy doctrine does

18

not bar related claims which have not arisen or accrued during the pendency of the original action." <u>McNally</u>, 698 A.2d at 548.

The entire controversy doctrine serves three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." <u>DiTrolio v. Antiles</u>, 662 A.2d 494, 502 (N.J. 1995). Use of the doctrine, however, "is discretionary and clarification of the limits of the doctrine is best left to case-by-case determination." <u>Circle Chevrolet Co. v. Giordano, Halleran & Ciesla</u>, 662 A.2d 509, 513 (N.J. 1995); <u>see</u> <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132, 137 (3d Cir. 1999) ("As an equitable doctrine, [the entire controversy doctrine's] application is flexible, with a case-by-case appreciation for fairness to the parties.").

There is no dispute that the New Jersey Superior Court's dismissal of plaintiffs' suits, subsequent to settlements, constituted valid and final decisions on the merits[8] or that

---

[8]    In their Opposition to Defendant's Motion to Dismiss, plaintiffs merely note that their "Federal causes of action were never adjudicated on the merits."  Plaintiffs are correct insofar as they did not raise any federal claims in their state court complaints.  Plaintiffs, however, do not contest that the Superior Court's dismissal of their state actions, in light of

the same parties involved in plaintiffs' state actions --
Mawhinney, Francesco, and the City -- are the same parties
involved in this federal action.  Therefore, the sole issue
before this Court is whether plaintiffs' federal complaint
claims are sufficiently related or connected to the state
complaint claims to warrant preclusion.  "[I]n determining
whether successive claims constitute one controversy for
purposes of the [entire controversy] doctrine, the central
consideration is whether the claims . . . arise from related
facts or the same transaction or series of transactions."
Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir.
2004) (quoting DiTrolio, 662 A.2d at 502).  It is a
"commonality of facts, rather than the commonality of issues,
parties or remedies that defines the scope of the controversy."
DiTrolio, 662 A.2d at 504; see Fornarotto v. Am. Waterworks
Co., Inc., 144 F.3d 276, 279-80 (3d Cir. 1998).

     Beginning with Mawhinney, the Court finds that the entire
controversy doctrine precludes its consideration of his federal
claims against the City.  In his state court complaints,
Mawhinney alleged racial discrimination and harassment.  Among
other accusations, Mawhinney specifically accused the City of

---

plaintiffs' settlements, constituted valid decisions on the
merits of those claims raised in their state court complaints.

failing to investigate any charges against African-American
firefighters, namely Williams and Bennett, and failing to
investigate or otherwise curb frivolous charges and other acts
of harassment directed toward him, all on account of race.
Moreover, Mawhinney alleged that a city official's racial bias
tainted a disciplinary investigation of charges levied against
him.  In addition, Mawhinney stated that the Vulcans had a
direct line of communication with city officials, enabling them
to express grievances and concerns without comporting with ACFD
rules and regulations.  Those allegations not only spawned the
purported misconduct Mawhinney alleges against the City in his
federal complaint, but they are also part of the same
transaction or series of transactions involving racial
discrimination and harassment that the state and federal
complaints seek to remedy.

Mawhinney's federal complaint avers that, on the basis of
race, the City did not honor its settlement agreement with
Mawhinney, did not equally enforce ACFD rules and regulations,
including those concerning confidentiality of ACFD matters, and
did not properly investigate and otherwise respond to
complaints issued against an African-American firefighter.
More specifically, according to Mawhinney's federal complaint,
the City Council refused to approve his settlement agreement in
order to appease, or at least to avoid confrontations with,

21

African-American firefighters.  Further, the City, for reasons
of race, did not investigate or punish Bennett appropriately
for his violations of ACFD rules and regulations or his
impermissible disclosures of ACFD matters, particularly of
Mawhinney's alleged racism and his settlement with the City.

Reading the state and federal complaints together, it is
clear that both of Mawhinney's actions accuse the City and its
officials of condoning, and even endorsing, racial preference
towards African-American firefighters.  Both suits indict the
City's disciplinary policies, and the City's reluctance to
investigate complaints against African-American firefighters,
as racially discriminatory.  That a number of the allegations
set forth in the federal court complaint -- i.e., the City
Council's failure to enforce the settlement, or the City's
inaction towards Bennett's impermissible disclosures --
occurred long after the filing of the state court complaints
does not sever the commonality of facts critical to both suits:
the City favored African-American firefighters at the expense
of Caucasian firefighters and did not readily provide a remedy,
or even an adequate remedial mechanism, for those Caucasian
employees.  Although the specific manifestations of that
alleged discrimination may have varied, the City's actions
constitute the same transaction or series of transactions,
involving many of the same actors, subject to the entire

22

controversy doctrine.  See Rhodes v. Twp. of Saddle Brook, 980
F. Supp. 777, 786 (D.N.J. 1997) (noting that for purposes of
the entire controversy doctrine, "[c]ontinuous conduct that
violates one's civil rights is part of the same factual
predicate").

    In an attempt to circumvent the application of the entire
controversy doctrine, Mawhinney points out that the alleged
misconduct set forth in the federal court complaint occurred
after the state court's discovery period ended and after the
time Mawhinney could have amended his complaint to address the
City's ongoing discrimination.[9]  For example, Mawhinney
questions how he could have included as part of his state court
action the claims asserted in the federal court complaint when
the events underlying those federal claims occurred after he
and the City reached a settlement which served to effectively
dismiss the state action.

    Mawhinney's argument is unavailing.  First, "New Jersey
Rule 4:9-1 provides that motions for leave to amend 'shall be
freely given in the interest of justice.'"  ITT Corp. v.
Intelnet Int'l Corp., 366 F.3d 205, 215 (3d Cir. 2004) (quoting
N.J. Ct. R. 4:9-1).  In determining whether to permit a party
to amend its pleadings and to add a cause of action, courts

---

[9]    Mawhinney states that, in his state court action,
discovery ended on February 8, 2008 and the final date on which
he could have asserted new claims was November 14, 2007.

have considered the preclusive effect of the entire controversy doctrine as a relevant factor.  See Sylvia B. Pressler, <u>Current N.J. Court Rules</u> 4:9-1 cmt. 2.3 (2009).  Perhaps more appropriate under the circumstances, a litigant may seek leave to submit a supplemental pleading "setting forth transactions or occurrences which took place after the date of the pleading sought to be supplemented."  N.J. Ct. R. 4:9-4; <u>see Studio 45 Discotheque, Inc. v. City of Union City</u>, 292 Fed. Appx. 197, 200 (3d Cir. 2008) ("Given its preclusive effect on subsequent related claims, the [entire controversy] doctrine is applied in conjunction with generous supplemental pleading procedures.").

Accordingly, New Jersey case law dictates that when a constituent claim arises during the pendency of a suit and is part of the entire controversy, a litigant has an obligation to bring it to the court's attention and to allow the judge to determine whether to join the claim to the current action or to reserve it for a subsequent suit.  <u>See McNally</u>, 698 A.2d at 547; <u>see also Roznowski v. Paticchio</u>, 2007 U.S. Dist. LEXIS 752, at *13 (D.N.J. Jan. 4, 2007) ("[C]ounsel should also inform the court of other potential claims that it may have against the same party.  One of the goals of the entire controversy doctrine is the efficient judicial administration of multiple claims." (quoting <u>Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc.</u>, 722 A.2d 527, 529 (1999))).  When the

litigant fails to seek leave to file a supplemental pleading and, thus, to enable the court to exercise its discretion, the claim is generally barred from subsequent adjudication.  See McNally, 698 A.2d at 547.

Mawhinney agreed to the settlement with the City on December 14, 2007.  Beginning almost immediately after the settlement was memorialized, Bennett, contrary to ACFD rules and regulations, began to publicize Mawhinney's alleged racism and his settlement with the City.  He allegedly continued to make improper public statements, including on radio shows in December 2007 and January 2008, and continuing through April 2008.  According to plaintiffs, the City took no corrective action against Bennett.  Meanwhile, the City Council, allegedly due to racial pressure exerted by Bennett and the Vulcans, refused to vote on and approve Mawhinney's settlement agreement with the City on December 28, 2007, January 23, 2008, and February 27, 2008, and rejected the settlement on March 12, 2008.

Despite the agreement between Mawhinney and the City, Mawhinney's state court action was still scheduled for trial on February 11, 2008.  On February 8, 2008, three days before the trial, the court agreed to postpone it on account of the settlement, but later re-listed the case for trial when the City Council refused to approve the agreement.  Even after the

25

Council finally approved the settlement on March 26, 2008,
Mawhinney's state court action remained until the Stipulation
of Dismissal was filed on April 25, 2008.

Therefore, before the trial date in February 2008,
Mawhinney knew or reasonably should have known that the City
Council had failed to approve his settlement,[10] that Bennett
had disclosed information in contravention of ACFD rules and
regulations, and that the City had not punished Bennett for his
grievances.  By the time the Stipulation of Dismissal was
entered in Mawhinney's case on April 25, 2008, dismissing with
prejudice his civil action, virtually every allegation
Mawhinney sets forth in his federal court complaint had
occurred and was known or should have been known by Mawhinney.
For those reasons, the claims set forth in Mawhinney's federal

---

[10]    In his federal court complaint, Mawhinney states that,
on February 28, 2008, he "was forced to file an application to
Enforce the Settlement . . . in an attempt to compel the City of
Atlantic City to abide by the terms of the settlement agreement
and to abide by the Merit System Board Order."  Thus, Mawhinney
acknowledges that before his state court action was dismissed, he
knew of the City's refusal to approve the settlement and knew to
take legal action at that time.  Mawhinney sought to enforce his
settlement in February 2008; therefore, a federal court complaint
filed in July 2008, seeking redress against the City for failing
to approve the settlement, seems precisely to fall within the
proscription of the entire controversy doctrine.  See Rhodes, 980
F. Supp. at 787 (stating that "[i]f defendants are in fact still
violating plaintiffs' civil rights, then plaintiffs should move
the trial court to issue an order to enforce its ruling" because
"[s]uch a motion is more consistent with the entire controversy
doctrine than is the institution of an action in [the federal
district court] for damages").

court complaint had accrued during the pendency of his state court action.  See Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (noting that "[i]t is only the knowledge of the existence of a cause of action during the first proceeding that invokes the entire controversy doctrine," and that "[t]he party has such knowledge if she knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another" (citations and internal quotation marks omitted)). Thus, Mawhinney was required to bring those claims before the Superior Court to determine whether they should be joined to the state court action.  See McNally, 698 A.2d at 547.  In the event that the Superior Court denied an amendment or supplement including those claims, then at least Mawhinney would have reserved his right to bring those claims here in a subsequent suit.  See Mystic Isle Dev. Corp., 662 A.2d at 332 ("[I]t is the party's original compliance with the doctrine, rather than the absence of a conclusive determination of a claim, that ensures preservation of that claim."); see also Brown, 506 A.2d at 34-35.

As for Francesco, he asserts the same arguments as does Mawhinney in defense of the federal court complaint.  The Court, nevertheless, finds that the entire controversy doctrine also bars his claims against the City.

27

In his state court complaint, Franceso alleged, among other things, that his grievances filed against Williams, an African-American firefighter, were not properly handled, and that, on account of his race, Williams and others filed frivolous charges against him.  In response to those charges, Francesco stated that the City failed to remedy the harassment and retaliation that he suffered and that he was not accorded a proper investigation or a fair and impartial disciplinary hearing.  In his federal court complaint, Francesco avers that, on October 15, 2007, Bennett and the Vulcans accused him of being absent from work without leave and sought disciplinary action against him.  According to Francesco, Barbara Camper, a City official, assisted Bennett and the Vulcans in their pursuit of the complaint against him even though it was baseless.  Although he ultimately was exonerated and Bennett was found to have acted inappropriately, explains Francesco, the City did not discipline Bennett.  Moreover, Francesco submits that Bennett has continued to harass him on account of race by seeking disciplinary action against him and that, despite repeated requests, the City has not investigated or otherwise responded to Francesco's allegations of harassment.

Both of Francesco's complaints challenge the City's allegedly discriminatory conduct in failing to appropriately investigate claims of harassment and to protect its employees

therefrom.   Therefore, Francesco's federal and state claims are
part of the same series of transactions.   Moreover, the October
2007 incident highlighted in the federal court complaint
occurred well before Francesco's state court action was settled
in February 2008.   There is no indication that Francesco
informed the Superior Court of the City's entertainment of the
frivolous charge filed by Bennett and the Vulcans in October
2007 or of the City's subsequent inaction involving other
frivolous charges levied against him.   Accordingly, those
claims are now barred by the entire controversy doctrine.

     To the extent that some of Francesco's federal claims --
or, for that matter, Mawhinney's -- may have occurred near the
end of his state court action or even after it was dismissed,
they were still part of the same series of transactions set
forth in the state court complaint.   See Studio 45 Discotheque,
Inc., 292 Fed. Appx. at 200 (finding that "[w]hile two
instances of City action occurred after the filing of the
initial complaint," the entire controversy doctrine still
barred subsequent claims because instances were part of
continuous action which allegedly violated civil rights);
Rhodes, 980 F. Supp. at 786 (precluding plaintiffs' claims
pursuant to the entire controversy doctrine because, even
though defendants' actions occurred during and after the first
proceeding, "the alleged conduct is part of a continuous

29

pattern of conduct that began before the institution of the [first proceeding").

For the foregoing reasons, the federal claims articulated by Mawhinney and Francesco against the City are barred by New Jersey's entire controversy doctrine and, thus, are dismissed.

### C.   The Vulcans' Motion to Dismiss Based on Supplemental Jurisdiction

The Vulcans request that this Court not exercise supplemental jurisdiction over plaintiffs' claims against them on the basis that the claims arise solely under New Jersey law and have no connection to plaintiffs' federal claims.[11] Plaintiffs contend that their claims against the Vulcans are so related to their federal claims against other defendants here that all of the claims must be litigated by this Court as part of a single case.

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case

---

[11]    In support of its argument, the Vulcans submit that plaintiffs have not asserted any federal claims against them nor could they have because the Vulcans are not state actors as Section 1983 defendants must be.  Plaintiffs concede that they have not asserted any federal claims against the Vulcans, but reiterate that they have asserted federal claims against other parties in this action.

or controversy under Article III of the United States
Constitution."  28 U.S.C. § 1367(a).  Further, "[s]uch
supplemental jurisdiction shall include claims that involve the
joinder or intervention of additional parties."  Id.

     Plaintiffs concede that they have not asserted a Section
1983 claim -- or, for that matter, any federal claim -- against
the Vulcans.  The absence of federal claims against the Vulcans
alone, however, does not strip this Court of supplemental
jurisdiction over the state law claims asserted against them.
So long as a federal claim remains and the state law claims
against the Vulcans constitute part of the same case and
controversy as does the federal claim, then this Court may
exercise supplemental jurisdiction over the entire suit.  See
28 U.S.C. § 1367(a).  Although a court may dismiss state law
claims where "the district court has dismissed all claims over
which it has original jurisdiction," 28 U.S.C. § 1367(c)(3)
(emphasis added), that is not the case here because the Court
has not dismissed all federal claims.

     As explained above, the federal claims asserted against
the City have been dismissed.  However, plaintiffs have named
Cappella as a defendant in this action, both individually and
in his official capacity as the Atlantic City Assistant
Business Administrator.  Moreover, plaintiffs reference
Cappella as part of their Section 1983 cause of action and aver

31

that he, among others, was "acting under color of state law." Accordingly, the complaint may be read to include a federal claim against Cappella in his individual capacity.[12]  Because no motion practice has expressly and conspicuously addressed the claims against Cappella, the Court will make no presumptions.  Therefore, the Court has original jurisdiction over any Section 1983 claim asserted against Cappella.  Whether or not such a claim is viable and may survive a motion to dismiss is not a question currently before this Court.

According to their federal complaint, plaintiffs submit that both Cappella and the Vulcans have perpetuated frivolous allegations pertaining to plaintiffs' character and actions. The aspersions allegedly cast by Cappella and the Vulcans seem to center around similar events and sentiments, such as Mawhinney's alleged racism.  Thus, the Court cannot say at this juncture that the state law claims set forth against the

---

[12]    A Section 1983 claim against a public official is tantamount to a Section 1983 claim against the public entity itself.  See Cuvo v. De Biasi, 169 Fed. Appx. 688, 693 (3d Cir. 2006) ("[A] lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." (citing McMillian v. Monroe County., 520 U.S. 781 (1997))); Carroll v. Bristol Twp., 827 F. Supp. 332, 335 (E.D. Pa. 1993) ("Claims against defendants in their official capacity represent an action against the municipality." (citing Brandon v. Holt, 469 U.S. 464, 468-71 (1985))).  For that reason, to the extent that plaintiffs' federal claim targets Cappella in his official capacity, and challenges the continuous pattern of civil rights violations alleged against the City, the claim is dismissed due to the entire controversy doctrine, as previously explicated.

Vulcans do not arise from the same nucleus of operative facts as does any federal claim against Cappella.  Further, the Court finds that, as the case is presently constituted, considerations of judicial economy, convenience, and fairness to the parties favor the adjudication of plaintiffs' claims in one proceeding.  See Cindrich v. Fisher, 2009 U.S. App. LEXIS 15161, at *19 (3d Cir. Jul. 8, 2009) (stating that "'[w]here the original federal jurisdiction claim is proceeding to trial . . . considerations [of judicial economy, convenience, and fairness to the parties] will normally counsel an exercise of district court jurisdiction over state claims based on the same nucleus of operative facts'" (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995))).  At this time, the Court finds no factors to countervail its decision to exercise supplemental jurisdiction.[13]

Therefore, the Vulcans' Motion to Dismiss for lack of supplemental jurisdiction is denied without prejudice.  If and when plaintiffs' federal claim against Cappella becomes susceptible to dismissal, the Vulcans may file another motion to dismiss for lack of supplemental jurisdiction or the Court may address the issue sua sponte.

---

[13]   Indeed, it would seem strange for this Court to dismiss plaintiffs' claims against the City due to their failure to join those claims to earlier court proceedings but, at the same time, refuse to exercise jurisdiction over plaintiffs' related claims involving different defendants.

## IV.  CONCLUSION

For the foregoing reasons, the City of Atlantic City's Motion to Dismiss is granted.  Further, the Vulcans' Motion to Dismiss is denied without prejudice.  An Order consistent with this Opinion will be entered.


Date: <u> January 11, 2010 </u>                <u>    /s/ NOEL L. HILLMAN   </u>
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.